IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dr. Raman Talwar,　　　　　　　　　　　　　Case No. 3:05 CV 7437

　　　　　　　　　　Plaintiff,　　　　　　　MEMORANDUM OPINION
　　　　　　　　　　　　　　　　　　　　　　AND ORDER
　　　-vs-
　　　　　　　　　　　　　　　　　　　　　　JUDGE JACK ZOUHARY
Catholic Healthcare Partners, et al.,

　　　　　　　　　　Defendants.

Plaintiff brings claims of Civil Rights Violations under 42 U.S.C. §§ 1981-1983 and the Fifth and Fourteenth Amendments, Breach of Contract, Common Law Fair Procedure Violations, and Defamation. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §1331 and 42 U.S.C. §2000e-5, as well as supplemental jurisdiction pursuant to 28 U.S.C. §1367.

Defendants assert that Plaintiff has shown no material facts in dispute and that viewing the evidence in a light most favorable to Plaintiff, judgment should be for Defendants as a matter of law. Alternatively, Defendants contend that, even if liable, their actions are immune under Ohio's Peer Review Immunity Statute. The Court finds, for the reasons below, that Defendants are entitled to judgment as a matter of law.

## **FACTUAL BACKGROUND**

Plaintiff Raman Telwar is an Indian born vascular surgeon who holds privileges at Defendant St. Rita's Medical Center (St. Rita's) in Lima, Ohio. In September 2003, one of Plaintiff's surgery

cases was reviewed for quality of care concerns by St. Rita's quality assurance committee. This committee had sufficient concerns to ask St. Rita's Medical Executive Committee (MEC) to review the case. The MEC review also revealed significant concerns and brought in a third-party (Greeley Company) to review Plaintiff's entire practice. The Greeley Report identified significant concerns as well, which prompted the MEC to formally investigate Plaintiff under St. Rita's Bylaws and Credentials Manual. Plaintiff was provided with a copy of the Greeley Report and was interviewed by members of the MEC, Imler and Schumm. During the interview, Imler and Schumm advised Plaintiff to refrain from exercising his privileges during the investigation. Additionally, during the interview, Plaintiff asked to present his own expert's report, to which Imler and Chumm agreed. The formal investigation considered its interview with Plaintiff, documents from the previous investigations and Plaintiff's expert's report, and concluded there was insufficient evidence to revoke Plaintiff's privileges. In June 2004, Plaintiff was advised of the findings and allowed to resume his privileges. In November 2005, Plaintiff filed the instant action, naming St. Rita's, the MEC, Imler, Schumm and Catholic Healthcare Partners (a nonprofit corporation which serves as the sole member of St. Rita's under Ohio nonprofit law) as Defendants.

## I. Civil Rights Violations - Section 1983

The Civil Rights Act of 1871, 42 U.S.C § 1983, provides a statutory cause of action for violations of the Fifth and Fourteenth Amendments. Under § 1983, Plaintiff must establish that (1) Defendants acted under color of state law; (2) the conduct deprived Plaintiff of constitutional rights; and (3) the deprivation of rights occurred without due process of law. *Grant v. Trinity Health-Michigan*, 390 F.Supp.2d 643, 656 (E.D.Mich. 2005).

Defendant St. Rita's is a nonprofit, non-governmental hospital. Key to this Court's analysis is whether Defendants acted "under color of state law" and could be recognized as a state actor. Actions under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments can only be brought against a state actor. *Grant v. Trinity Health-Michigan*, 390 F.Supp. 2d 643, 656 (E.D. Mich. 2005) ("merely private conduct, no matter how discriminatory or wrongful" is not actionable under § 1983) (citing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). Plaintiff contends that Defendants are state actors because they received compensation from Medicare and Medicaid, operate "in and affected with the public interest", are subject to public control, and "received some public financial assistance." (Pl.'s Resp. 3). "It is well-established, however, that private hospitals, even those receiving federal and state funding and tax-exempt status, are not state actors under § 1983." *Grant*, 390 F.Supp.2d at 657.

A private party may act under color of state law when its actions are "fairly attributable to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). The U.S. Supreme Court has established three tests to determine whether an action is "fairly attributable to the state": (1) public function test; (2) state compulsion test; and (3) symbiotic relationship or nexus test. *Id.* at 1335.

The Record does not support a conclusion that Defendants have engaged in public function. Plaintiff bears the burden of showing Defendants engaged in an action "traditionally exclusively reserved to the state, such as holding elections ... or eminent domain." *Id*. Plaintiff fails to meet his burden. Defendants' investigation and review of Plaintiff's medical practice is not an action traditionally reserved to the state.

"The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed

3

to be that of the state." *Id*. "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Id*. Here, Plaintiff merely shows that the state regulated and partially funded Defendants. What he fails to show is any evidence of coercive state power. The state did not choose the investigators or the members of the review committees, nor did the state make the decision to review and investigate Plaintiff. There is no indication Defendants' choices were coerced or significantly encouraged by the state and, therefore, Plaintiff fails to meet the state compulsion test.

To show state action under the symbiotic relationship test, there must be "a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky*, 960 F.2d at 1335. It is "well-established that state regulation, even when extensive, is not sufficient to justify a finding of a close nexus between the state and the regulated entity." *Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000). Similarly, public funding, even when it comprises nearly all of the defendant's income and includes Medicare and Medicaid, is insufficient to establish a close nexus. *Id*; *Sarin v. Samaritan Health Center*, 813 F.2d 755, 759 (6th Cir. 1987). In light of Plaintiff's failure to show material facts in dispute, and the insufficiency of evidence that Defendants' actions were state actions, Plaintiff's Fifth and Fourteenth Amendments claims brought under 28 U.S.C. § 1983 must fail.

**II.     Civil Rights Violations - Section 1981**

Plaintiff also brings a claim under 28 U.S.C. § 1981. "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under

4

the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, — U.S. — , 126 S.Ct. 1246, 1250 (2006).

Defendants assert that no contractual relationship existed, let alone was impaired, nor did their actions block the creation of one. Plaintiff admits that he did not have an employment contract with Defendant St. Rita's, nor with Defendants Schumm or Imler, and could not identify any contract with the Medical Executive Committee or Catholic Healthcare Partners (Talwar Dep. 24, 126-31).

Plaintiff argues however that St. Rita's Bylaws and Credentials Manual create a binding contract. For the Bylaws to create a binding contract, both parties must intend to be bound. *Munoz v. Flower Hosp.*, 30 Ohio App. 3d 162, 166 (1985). Ohio courts have recognized that when the Bylaws are "subject to the ultimate authority" of the Board of Trustees, the Board and the Hospital are not bound by the Bylaws. *Munoz*, 30 Ohio App. 3d at 166. Similarly, the Credentials Manual (Section VIII, ¶3) states the Manual may be amended by a resolution of the Board of Trustees. According to the language of the Manual, the Board has the ultimate authority to change the Manual and did not intend to contractually bind itself to the Manual. If the Defendants were not bound, there can be no contractual relationship. In the absence of a contractual relationship there can be no Section 1981 claim, and summary judgment is appropriate. *See McDonald*, 126 S.Ct. at 1250.

Even if a contract existed, Plaintiff fails to show a prima facie case of discrimination under Section 1981. Plaintiff admitted he lacked direct evidence of discrimination, and therefore the analysis proceeds under the *McDonnell-Douglas* analysis of circumstantial evidence of discrimination. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The elements of a prima facie case are: (1) Plaintiff is a member of a protected class; (2) Plaintiff is qualified for his job; (3) an adverse employment action; and (4) Plaintiff was treated less favorably than a similarly situated

person outside the protected class. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004). Plaintiff fails to establish the fourth element, a similarly situated person treated differently.

Plaintiff submits his own subjective belief that Defendants "had racial reasons" for investigating his medical practice and that Caucasian physicians were not investigated (Def.'s Resp. 8-9; Talwar Aff. ¶19). Conclusory allegations and subjective beliefs are "insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992). Without additional evidence, Plaintiff fails to establish the elements of a prima facie case of discrimination under Section 1981. Even if this was not enough, Plaintiff did not respond with evidence of pretext, instead offering only that Defendants tried to "get rid of all non white physicians from competing with white American physicians" (Def.'s Resp. 7). For these reasons as well, summary judgment is appropriate.

### III.     Breach of Contract

The elements of a breach of contract claim are: (1) the existence of a contract; (2) Plaintiff's performance; (3) Defendants' breach; and (4) Plaintiff's damages. *Doner v. Snapp*, 98 Ohio App. 3d 597, 600 (1994). For the reasons set forth under the Section 1981 analysis, no contract exists.

Even if a contract existed, Plaintiff fails to show a breach. Plaintiff contends the contract was breached when Defendants refused to give him information on the basis for the investigations or the reasoning by the committee. However, Defendants were under no obligation to provide that information to Plaintiff. The Credentials Manual specifically states: "[t]he Medical Staff member **may** be notified that an investigation is being conducted . . ." (Credentials Manual, p. 27). There is no requirement that the individual be informed on the investigation until he is invited to interview with the investigators (Credentials Manual, p. 28). At the time of the interview "the individual shall be

6

informed of the general nature of the allegations giving rise to the investigation requested and the individual shall be invited to discuss, explain or refute the allegations" (Credentials Manual, p. 27).

The Record reflects that Plaintiff was informed of the general nature of the investigation and was given the opportunity to present his own side of the story as well as the opinion of his own expert (Telwar Dep. 90-91; Imler Aff. ¶¶ 11, 14; Hux Aff. ¶ 10; Schumm Aff. ¶¶ 11, 14). Plaintiff fails to show a breach of either the Bylaws or Credential Manual, and cannot meet the elements of a breach of contract claim.

### IV. Violation of Common Law Fair Procedure Rights

Plaintiff bases this claim, as well, on Defendants' failure to explain the basis for the investigation. However, Plaintiff is only entitled to minimal due process standards under Ohio law. *Gureasko v. Bethesda Hosp.*, 116 Ohio App. 3d 724, 729 (1996) ("a physician's staff privileges at a private hospital are protected by only minimal procedural due process"). "The board of trustees of a private hospital has broad discretion in determining who shall be permitted to have staff privileges. Courts should not interfere with the exercise of this discretion unless the hospital has acted in an arbitrary, capricious, or unreasonable manner or, in other words, has abused its discretion." *Bouquett v. St. Elizabeth Corp.*, 43 Ohio St.3d 50, syllabus ¶ 1 (1989).

Plaintiff asserts in his affidavit that Defendants acted arbitrarily, capriciously and unreasonably by (1) denying him access to investigation documents; or (2) performing an investigation when these documents never existed (Pl.'s Resp. Ex. B). Plaintiff, however, (1) is not entitled to these documents under the Defendants' Bylaws and (2) merely speculates that since Defendants refuse to produce the investigation documents, they may not exist.

7

The Record indicates Defendants followed the procedures in the Bylaws. Unless these Bylaws violate the minimal due process required under Ohio law, the Court must defer to the broad discretion given to hospitals in this situation. In Ohio, minimal due process requires "meaningful notice of adverse actions and the grounds or reasons for such actions, with an opportunity to address or challenge those grounds during the review process." *Christenson v. Mt. Carmel Health*, 112 Ohio App. 3d 161, 172 (1996). Plaintiff knew of the general nature of the investigation, had the opportunity to address and challenge the investigation, and had the opportunity to submit the findings of his own expert. The due process afforded to Plaintiff more than satisfies the requirement under Ohio law.

**V.     Defamation**

Plaintiff's defamation claim is subject to a one year statute of limitations. Ohio Rev. Code § 2305.11(A). The limitations period begins to run, irregardless of the defamed person's knowledge, either on the publication of written words or when the slanderous remarks are spoken. *Daubenmire v. Sommers*, 156 Ohio App. 3d 322, 341 (2004).

Plaintiff asserts numerous occasions of alleged defamation by Schumm and Imler (Talwar Dep. 153-162, 167). Of these occasions, the earliest is April 2004 and the most recent is July 2004. Plaintiff filed this lawsuit in November 2005. Under the applicable statute of limitations, the alleged defamation of July 2004 (the latest date) would have required a filing no later than July 2005. November 2005 is too late. Plaintiff's defamation claims are barred by Ohio Rev. Code § 2305.11(A).

**VI.     Peer Review Immunity**

All of Plaintiff's claims fail for the reasons detailed above. Additionally, Defendants argue they are protected by Ohio's peer review immunity under Ohio Rev. Code § 2305.251. The pertinent part of the statute provides:

8

> (A) No health care entity shall be liable in damages to any person for any acts, omissions, decisions, or other conduct within the scope of the functions of a peer review committee of the health care entity. No individual who is a member of or works for or on behalf of a peer review committee of a health care entity shall be liable in damages to any person for any acts, omissions, decisions, or other conduct within the scope of the functions of the peer review committee.

The Record provides ample evidence that St. Rita's, as a hospital, qualifies as a "health care entity" and that the MEC qualifies as a "peer review committee." Ohio Rev. Code § 2305.25(A), (E)(2)(a), (E)(2)(c). As Schumm and Imler are members of the MEC, all Defendants (including Catholic Health Partners which would have vicarious liability) are immune from liability if their actions are "within the scope of the functions of the peer review committee." Ohio Rev. Code § 2305.251. There is no evidence that the MEC exceeded the scope of their functions as a peer review committee or had an improper motive. Defendants St. Rita's, the MEC, and Schumm and Imler meet the requirements of Ohio Rev. Code § 2305.251 and are therefore immune from liability for actions stemming from the peer review process.

"To overcome the qualified privilege for peer review materials under R.C. 2305.251, the party seeking relief must present clear and convincing evidence that defendants acted with actual malice." *Wall v. Ohio Permanente Medical Group, Inc.*, 119 Ohio App. 3d 654, 666 (1997) (citing *Jacobs v. Frank*, 60 Ohio St. 3d 111 (1991)). "Actual malice in this context requires proof that defendants made statements in connection with the peer review process with knowledge they were false or with reckless disregard for whether they were true or false." *Id.* Plaintiff asserts that Defendants acted with malice and evil intent (Talwar Aff. ¶19), but fails to offer evidence that Defendants knew or had reckless disregard for truth in their investigation or in statements to him.

As all of Plaintiff's claims arise out of the peer review process, and Plaintiffs fail to establish a material fact as to malice, these Defendants are entitled to the Ohio statutory immunity.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 21) is GRANTED, and judgment is entered in Defendants' favor on all claims.

IT IS SO ORDERED.

                                                       s/ *Jack Zouhary*
                                                       JACK ZOUHARY
                                                       U. S. DISTRICT JUDGE

                                                       December 6, 2006